No. 12,895.

STATE OF LOUISIANA vs. PAUL L. FOURCHY.

SYLLABUS.

(1.) An instruction given by the court in the case of a person charged with embezzlement that "if any part of the funds charged to have been embezzled has been proven to have been embezzled beyond a reasonable doubt, the jury must convict," is not erroneous.

Neither the commission of, nor the punishment for the crime of embezzlement, depends upon the amount or value of the thing embezzled, and the charge was authorized to be given by Section 1061 of the Revised Statutes.

(2.) The District Attorney is not called upon to know or anticipate the special defenses which a defendant may set up. He has to await their development on the trial and repel them if he can. It does not follow because testimony

offered by him for that purpose may have a tendency to incidentally strengthen the State's own case that it is any the less rebuttal testimony.

(3.) While a prosecuting officer has the right to press upon the jury any view of the case fairly arising from the testimony, he should not seek to have the jury accord to testimony which he himself had offered and had received for a limited, specific purpose, an effect entirely beyond that which he had declared would be its legitimate scope. His doing so, will not, however, be ground for reversal, unless the court is satisfied that defendant has been prejudiced thereby.            •

(4.) If the court erroneously • overrules defendant's challenges for cause, and thereafter he excludes the obnoxious jurors by peremptory challenges, he can assign the ruling of the court for error, if it appear that before the jury was sworn his quiver of peremptory challenges was exhausted. In such case, there is room for the presumption that the ruling of the court may have resulted in leaving upon the panel one or more obnoxious jurors whom he might but for the ruling have excluded by peremptory challenge.

(5.) Answers given finally by a juror on his *voir dire* to questions propounded to him by the district judge differing from those first given and which had shown him utterly incompetent are entitled to little weight when they have been changed after the judge has threatened the juror with proceedings for contempt of court, because of his original answers. Such a juror should not be placed upon the panel.

ON APPEAL from the Criminal District Court for the Parish of Orleans.   *Moise, J.*                        ,

*Robert H. Marr,* District Attorney, for the State, Plaintiff and Appellee.

*Henriques & Dunn* for Defendant and Appellant.

Argued and submitted November 26, 1898.
Opinion handed down February 6, 1899.      •

The opinion of the court was delivered by
NICHOLLS, C. J.   The defendant was indicted for embezzlement, convicted and sentenced to imprisonment at hard labor for two years. He appealed.   His grounds of complaint are embodied in six bills of exception.

The first error urged is the action of the court in refusing to maintain defendant's challenge for cause of the eighth juror drawn from the box, one J. Barrere, thus compelling a peremptory challenge.

The bill of exception having reference to this matter is as follows:

"After the State and the defendant had announced to the court that they were ready to proceed with the cause, it was then ordered that the crier of Section 'B' of said Criminal District Court proceed to draw a jury from the box and in open court from the panel of jurors duly impannelled for the May term of said Section 'B' and the said jurors as drawn from said box and in open court were each sworn on his *voir dire* touching his qualifications as a juror in this cause, and one J. Emile Barrere was drawn as the eighth juror from said box, was duly sworn on his *voir dire,* and after being examined by the Assistant District Attorney the said juror was tendered by the State to the defendant, and thereupon the defendant, by his counsel, cross-examined the said juror, and propounded to him the questions which, with the answers of said juror, are annexed hereto and made a part of the bill of exceptions and are as follows, to-wit:

"J. Emile Barrere, after being examined by the State on his *voir dire* and tendered by the State, was then cross-examined by Mr. Henriques, of counsel for the defendant, as follows:

"Q.—If you were taken as a juror in this case would you require the State to prove his guilt, or would you require the accused to prove his innocence?

"A.—Well, I would require him to prove his innocence.

"Q.—Do you mean that you would require him to prove that he was not guilty?

"A.—Yes, sir.

"Q.—Well, the law says that every man who is charged with an offense is presumed to be innocent, and the State, who brings the charge, must prove the guilt of the accused, and must prove his guilt beyond reasonable doubt.

"A.—Well, if the State proved it all right.

"Q.—Now, that being the law, if you were taken as a juror in this case would you require the State to prove his guilt, or would you require him to prove his innocence?

"A.—I would have to see him prove his innocence.

"Q.—You would require him to prove his innocence?

"A.—Yes, sir, fully.

"Q.—And you know the meaning of your answers?

"A.—Yes, sir.

"Q.—Then, unless he proved his innocence to you, you would not render a verdict in his favor, would you?

"A.—No, sir, I could not.

"Q.—You could not?

"A.—No, sir.

"Q.—And this principle of law, which is law, as I have stated to you, would have no effect with you at all? You would require him to prove his innocence?

"A.—Yes, sir.

"Challenged for cause.

"By the court.

"Q.—Would you render a verdict in this case according to the law as given you by the court, and the evidence you heard from the witnesses?

"A.—Yes, sir.

"Q.—Because your answer just now indicated that you would not do that?

"A.—I mean that if the evidence found him guilty I would find him guilty.

"Q.—I ask you if you were to take your oath to try this cause according to the law as given you by the court and the evidence of the witnesses given on the trial, would you do it?

"A.—I said he would have to prove his innocence.

"Q.—Then you would not act according to law?

"A.—No, sir.

"Q.—I will have to send you down for contempt if you talk that way to me.

"A.—I mean to say—

"Q.—I expect you are dodging to get off this jury.

"A.—No, sir, I am not.

"Q.—I do not see how you can say you would try this case according to law and the evidence, and then say he would have to prove his innocence.

"A.—I mean to say I would do what is right to the best of my ability. I mean to say that the accused should be proved not to be guilty.

"Q.—I am telling you what the law is. The law is that the State must prove the guilt of the accused, and that he is not required to prove his innocence. That is the law. Now, when the court gives you that law in charge I ask you if you can render a verdict according

to that law and according to the evidence you hear on the trial of the cause?

"A.—Yes, sir.

"Q.—I thought you would go according to your opinion, and not according to the law?

"A.—I was ignorant of that fact.

"Q.—Now you know the jury must render a verdict according to law—that is the oath you take, can you do it?

"A.—Yes, sir, I would give the accused a fair trial.

"Q.—I am not speaking about that. I am speaking now of the law and the evidence. You understand now that you must render a verdict under your oath, according to the law as given you by the court, and the evidence you hear from the witnesses. I tell you the accused is not required to prove his innocence; is not required to put a single witness on the stand, and if, after the evidence is all in, the State fails to prove his guilt beyond a reasonable doubt, the jury must bring a verdict of not guilty. Can you do that?

"A.—Yes, sir.

"The Court—I believe that the juror was under a misapprehension and that he is a competent juror.

"Mr. Henriques—I challenge him for cause.

"The Court—Challenge for cause is overruled.

"Mr. Henriques—I challenge him peremptorily and reserve bill to your Honor's ruling, and make the testimony of the juror a part of this bill."

The bill having been made these recitals proceeded further as follows:

"The juror Emile Barrere was the eighth juror tendered to defendant for acceptance or rejection; when this juror was tendered defendant had not exhausted his peremptory challenges, but before the jury was completed in the cause and before the last juror was sworn therein the defendant had exhausted his challenges."

The judge's statement added to the bill was as follows:

"*Per curiam:* The entire examination of the juror is not in the record. He had previously answered all questions of the District Attorney and counsel for the defendant, disclosing his fitness and competency and freedom from all bias or prejudice. It was only when a question of law, the rule as to the burden of proof, was put to the juror that he answered wrong and persisted in the error after the instruction

State vs. Fourchy.

of the court, in a manner to arouse in the mind of the court a suspicion that he was deliberately attempting to evade jury duty. A further examination of the juror dispelled this suspicion, and convinced the court that the answer was more from ignorance than a desire to evade jury duty, and this was quite natural since the question propounded was one of pure law, requiring instruction and explanation."

## SECOND BILL.

Defendant's second bill of exception was reserved to the action of the District Court in respect to a witness named Mirabel LeBlanc. The bill recites that after the defendant had gone to trial upon a plea of "Not Guilty," the District Attorney, in support of the prosecution, placed two witnesses, first Emile J. LeBlanc and next Charles J. Theard, upon the stand, and after said witnesses had been examined in chief and cross-examined by the defence, the case closed.    That thereafter the defendant, in his own behalf, placed the witness Mandeville, on the stand, and subsequently testified himself and then announced that he rested his case; that this witness, Mirabel LeBlanc, was then sworn as in rebuttal by the State, and he was asked 'Whether he knew of any business transaction between his son, Emile J. LeBlanc (the party whose money was alleged to have been embezzled), and defendant.    That the defendant objected that in so doing the District Attorney was not proceeding regularly; that he could not divide up his case;    that he should have put the accused in possession of all the evidence he had so as to let him know what he would be called upon to defend. That he could not put in evidence in rebuttal that which might be evidence in chief.    That thereupon the court stated that the question was put in the way to show it was rebuttal; that defendant's counsel replied "that the question was not shaped properly."    Whereupon the court permitted the District Attorney to ask the witness "if he remembered that transaction between his son and Mr. Fourchy."    That thereupon the defendant submitted to the court "that the evidence sought to be elicited from the witness was not rebuttal testimony." That the District Attorney replied "that the defence set up here was that it was a loan."    That the court then asked, "what does the State propose to prove by this witness?" and the District Attorney replied, "to prove that it was not a loan."

That the witness thereupon answered the question propounded to
him, and defendant reserved a bill to the question and to the answer
thereto, and to the court's question to the District Attorney. That all
this took place in presence of the jury. Defendant's objection to the
question propounded by the court to the District Attorney was that
the witness had not testified; that the matter submitted to the court
was whether the question propounded to the witness by the District
Attorney was a legitimate one or not; that the court's question and
the District Attorney's answer might have had a tendency to influ-
ence the jury and prejudice the case of the defendant.

The court's statement on this point is that the objection urged by
the defense was that the question asked was not shaped so as to obtain
evidence in rebuttal; that it would open some new question.   The
court assumed the first question objected to was propounded merely
as preliminary, to lead the witness to the particular facts to be ascer-
tained as evidence in rebuttal.

The question by the court to the prosecuting officer was for the pur-
pose of determining whether or not the facts sought to be proved were
really evidence in rebuttal.   To determine this, the court had either to
hear the evidence of the witness or by the more convenient method to
secure the information from the District Attorney.   The other objec-
tions urged by defendant in the bill were that the question propounded
did not seek to rebut any evidence offered in behalf of defendant, that
if the object of the inquiry or question propounded to the witness was
to contradict the defendant, who was the only witness that had testi-
fied in his own behalf, then the proper foundation should have been
laid by interrogating him as to the time, place and circumstances con-
nected with the alleged conversation or satement that is now at-
tempted to be disproved by this witness.

In respect to the other objections the court stated:   "The defendant
swore as a witness in his own behalf, that the money received from
LeBlanc was a personal loan to himself, without security, and not for
investment in mortgage paper.   He swore he never used the word
mortgage.   In his testimony the following questions were asked and
answered by him as follows:

Q.—Did you get that money from him, stating that you intended to
invest it in mortgage paper?

A.—I never told him anything of the kind, never told him a word of

State vs. Fourchy.

mortgage paper. It was a loan to me. He pretended to have confidence in me and he made that offer.

Q.—At the time you received this money from Mr. LeBlanc, what was the understanding between you and him about this money?

A.—It was a loan to me.

Q.—Did you at any time tell Mr. LeBlanc or offer him a mortgage on the Sazarac or Absinth House?

A.—Never did in the world; dont know anything about the title to either party. I don't know absolutely what the gentleman referred to. At that time I used to own a property on the Bayou.

Q.—Did you say anything to him about a loan on a piece of property in the neighborhood of your's, worth three thousand dollars?

A.—Never in the world.

Q.—At the time you received this money from Mr. LeBlanc what was the understanding?

A.—About the money?

Q.—Yes.

A.—That the money was to be returned to him in one year.

Q.—Who was it loaned to?

A.—It was loaned to me.

Q.—To you personally?

A.—Yes, sir.

Q.—At the time you got this money was anything said about the money being invested in mortgage paper?

A.—Not a word, sir, not a particle of it, sir."

Mr. Mirabel LeBlanc's testimony, as far as it goes, tends to rebut these statements. It was too insignificant to have been offered in chief and was properly offered in rebuttal. To show this the entire testimony taken on the trial is made part of this bill.

THIRD BILL.

In defendant's third bill of exceptions he complains of the District Attorney's making use in his opening argument before the jury, of the expression that "honest men do not be indicted by the Grand Jury." The bill recites that as soon as these words were uttered counsel for defendant requested the court to have said words so uttered stricken out; that before the court ruled on the question, the District Attorney, addressing the court, said: "I refer, if your Honor please, to the·

facts as I find them now," and the court, in presence of jury, then, and in answer to the objection made by counsel for defendant, said:

"The court declines to interfere in this matter on the ground that the argument of the District Attorney does not refer to the question of the guilt or innocence of the accused, but refers to the question of his veracity."

In reference to this matter the court states that the stenographer's official report of what transpired, was made part of the bill. That all of Mr. Finney's argument was not taken down; that when a single isolated sentence, standing alone, was urged as an objection, and the court did not have the benefit of the shading, tonings and modifications which preceded the remark, it presented a more formidable showing. That at the time the statement was made, Mr. Finney was arguing defendant's credibility as a witness, his remarks were temperate and free from invective or vituperation. The statement made was an inference drawn from facts in the record, the defendant having admitted that he was five times indicted for embezzlement, and the cases were still pending against him in the Criminal District Court. His counsel offered and introduced one of these in evidence. These various indictments were offered for the purpose of impeaching defendant's credibility as a witness. Mr. Finney's argument was specially directed to that end. The court charged the jury as follows upon the subject:

"If any evidence has been offered in this case tending to show that the defendant has been charged with any other crime, such evidence has been offered for the purpose of impeaching his credibility as a witness, and the jury should confine it to that purpose. No man should be convicted of one crime because he is charged with another. You are therefore instructed that if evidence of this character has been introduced it must be considered only in connection with the veracity of the witness and must not affect his guilt or innocence."

Mr. Finney did not, at that time, refer to the guilt or innocence of the prisoner; his remarks when taken with all that was said, did not mean that indictments by Grand Juries were evidence of guilt, but that persons so indicted continually could not be honest in their statements. A general and argumentative proposition may be put in the form stated, precisely as a man may argue interrogatively without intending that he should be answered. Upon this view the court did not think it improper to argue dishonesty in speech from a given state of

facts in the record. The ruling of the court was made in the presence of the jury and fairly indicated to them the interpretation to be placed upon the statements; that the argument was directed against defendant's veracity and not to his guilt. But to show that they were further safeguard from any prejudicial or unfavorable interpretation from the objectionable remark as to indictments, if improper, which is not conceded, the court charged the jury: "The jury are instructed by the court that the indictment in this case is a mere accusation or charge against the defendant, is not of itself any evidence of defendant's guilt and no juror should permit himself to be to any extent influenced against the defendant because of its having been returned to the jury as a true bill."

Mr. Finney ceased after objection and proceeded to argue on a different subject. I do not think defendant was prejudiced in the least.

## FOURTH BILL.

In defendant's fourth bill he complains of that portion of the charge of the court in which it instructed the jury that "if any part of the funds charged to have been embezzled have been proven to have been embezzled beyond a reasonable doubt, the jury should convict."

The court cites as authority for the charge Section 1061 of the Revised Statutes.

## FIFTH BILL.

Defendant complains in his fifth bill of exceptions to the refusal of the District Court to give the following special charge, which he requested should be given to the jury: "The presumption of innocence is a presumption of law established in favor of all accused. It is evidence introduced by the law in his behalf. It is one of the instruments of proof going to bring about the proof from which reasonable doubt arises."

The court states as its reasons for not giving the special charge that it was covered by the general charge it had given to the jury.

## SIXTH BILL.

In his sixth bill defendant complains of the action of the court in overruling his motion for a new trial.

State vs. Fourchy.

In defendant's motion for a new trial he urged that the verdict returned was contrary to law and the evidence, and assigned as errors committed to his prejudice, the matters and things set forth in his various bills of exception.

In his fourth ground for a new trial, referring to the overruling of his challenge for cause of the juror Barrere, he averred that the court's ruling compelled him to exhaust his peremptory challenges; that it worked great injury to him and deprived him of a right he was vested with to his great injury."

OPINION.

The instruction given by the court to the jury, that "if any part of the funds charged to have been embezzled has been proven to have been embezzled beyond a reasonable doubt the jury should convict," was not erroneous.

Neither the commission of nor the punishment for the crime of "embezzlement" depends upon the value or amount of the thing embezzled. (State vs. Thomas, 26th Ann. 328.) The charge was made with reference to a verdict of guilty as responsive to the charge "actually made" of embezzlement, not a possible verdict of guilty as for "larceny" under the indictment.

Section 1061 of the Revised Statutes declares that the allegations of the indictment, as far as regards the description of the property, shall "in case of embezzlement, be sustained by proof that the offender embezzled any piece of coin or bank note, or any portion of the value thereof."

We see no force in the objections urged in defendant's second bill of exceptions, touching the testimony of the witness Mirabel LeBlanc, which was permitted to be introduced over appellant's contention that it was testimony not in rebuttal, but in chief, and which should have been brought out by examination of the witness before the State had closed its case on its original direct evidence, nor do we see any force in the complaint made of the question asked by the judge of the District Attorney as to what "was intended to be proved by the witness," and of the answer given to that question, "that the defence set up here was that it was a loan," (the transaction between defendant and Emile J. LeBlanc) and "the object of the testimony was to prove that it was not a loan."

We have several times had occasion to say that where one of the parties to a suit offers testimony apparently irrelevant, or testimony which is admissible only for certain purposes, or under certain contingencies, it is his duty, when tendering the testimony, to announce the object and purpose had in view, so as to enable the court to determine primarily whether it would be admissible at all, and next to enable it in its subsequent supervision of the case and in its charge to the jury to see that proper limitations should be observed as to the scope and effect of the testimony.

It would have been right and proper for the District Attorney, without question from the court, to have made the same announcement as that which he did when questioned. When objection was made by the defendant to the line of examination to which he surmised the witness would be subjected, it was necessary for the court, for the proper determination of the force of the objection, to know what the exact situation was, and would be.

In State vs. Bartley, 34th Ann. 147, a question having arisen as to the introduction in evidence of a confession proposed to be offered against the defendant, it was complained that the witnesses touching the character of the confession, were examined before the jury, and that the ruling of the court as to the admissibility of the confession required his passing on a question of fact and the credibility of witnesses in presence of the jury to the prejudice of the accused.

In reference to the matter, we said: "The record does not show that the witnesses testified touching the confession in the presence of the jury, and if they did, as the judge was bound to decide the question of the admissibility of the confession, of a question depending solely on the character of the confession, whether voluntary or not, we cannot well see how the effect of that ruling on the jury, though it might have been incidentally on a question of fact pertaining to the main issue, or on the credibility of witnesses, was to be avoided."

We ourselves do not see how the question asked by the court could possibly have prejudiced the defendant. What was said was said in the presence of the jury, but not for the jury, or to affect its action in any way. (42 Pac. 960.)

In State vs. Spencer, 45th Ann. 1; State vs. Boswell, 45th Ann. 1188, and State vs. Pruett, 49th Ann. 299, we had occasion to refer at some length to the character of rebutting evidence and rebutting testimony in connection with charges made that testimony which properly

should have been introduced by the State, in making out its case by examination of the State's witnesses in opening its case, had been held in reserve to be improperly used on a false claim that the testimony was rebutting evidence. There can be no doubt that it is the duty of the District Attorney, in the interest of fairness to an accused, in the absence of special reasons controlling his course in that respect, to place at once upon the stand all the witnesses upon whom he relies to establish defendant's guilt, but it frequently happens (as we said in State vs. Spencer, 45th Ann. 1) that such departure from the general rule has to be made from motives entirely foreign from any desire to obtain a conviction through *finessing* as to order of proof. It also not infrequently happens that counsel of accused erroneously conclude that evidence offered and received as rebuttal is not such in law and fact, because it may have a tendency to confirm and corroborate the witnesses of the State who had been first introduced for the purpose of establishing guilt of the accused. In State vs. Boswell, 45th Ann. 1158, we said: "The fact that after the defendant had closed his case, the State recalled some of its witnesses, and interrogated them as to matters which might have been relevantly and properly introduced originally as part of the State's evidence in chief, does not necessarily affix to that testimony the character of new and direct criminative evidence in chief."

In State vs. Pruett, 49th Ann. 299, we quoted from Rice on Evidence, and the authorities cited by him, a sentence in which rebutting evidence is referred to as meaning "not merely evidence which contradicts the witnesses on the opposite side, but evidence in denial of some affirmative fact which the answering party is endeavoring to prove."

The District Attorney in criminal cases has done his duty when he has offered all the evidence in his power and under his control which is necessary if not explained or disproved to establish the guilt of the accused. The plea of "not guilty" opens wide the door to defenses of all kinds. The prosecuting officer in most instances is ignorant of the peculiar lines or special grounds of defense which will be set up. He is not bound to know or to anticipate them, but is authorized to await their development on the trial and to disprove them if he can. It does not follow that because in the counter attack matters may become necessary to be shown by way of breaking down the defendant's case as set up by him which have a tendency incidentally to strengthen the State's own case, that the testimony is any the less rebuttal testimony.

It may be that an accused may limit his defense so closely to successful proof that a particular fact had occurred at a particular time and place mentioned, as to limit the prosecution in reply to disproof of the testimony going to show that that particular fact had happened at that particular time and place. Such seem to have been the facts of one of the cases cited by counsel of defendant. The range and scope of the State's testimony in rebuttal depends so much upon the range and scope of that offered by the defendant, that it would be impossible to lay down any fixed rule in advance by which to be guided in particular cases.

We think the question asked of Mirabel LeBlanc and the answer given by him, though apparently of little importance in the case, were none the less fairly in rebuttal of defendant's own account of matters as they transpired.

Defendant complains that the District Attorney in his opening address to the jury made use of the expression that "honest men do not be indicted by the Grand Jury."

In State vs. Johnson, 48th Ann. 90, we said that the prosecuting officer had the right to press upon the jury any view of the case arising out of the evidence; adding that to justify the court in setting aside the verdict of a jury on the ground of improper remarks of a District Attorney it would have to be very thoroughly convinced that the jury was influenced by such remarks and that they contributed to the verdict found. That were it to pursue any other course the energies of counsel of accused parties would be constantly directed to finding and seizing upon flaws in the arguments of the prosecuting officer and pressing upon an appellate court which neither saw nor heard the District Attorney, nor saw the jury he addressed, nor was informed as to the testimony in the case that the conviction of their clients was not due to their guilt, but to improper conduct on the part of counsel for the State. That matters of that kind could, as a general rule, be left to the supervision and control of the District Judge, a sworn officer of the law, standing utterly impartial between the accused and the State.

In the case at bar the prosecution had been permitted, without objection, to introduce in evidence another indictment which had been returned against the defendant for embezzlement, but expressly limited as to its purpose and proposed effect to an attack upon the credibility of the accused, who had taken the stand in his own behalf. Whether it would have been admissible for that purpose had objection

been made, we need not now consider, as the defendant acquiesced in and consented to its use for that particular purpose and he can scarcely complain that the District Attorney and the court should have taken the same view of the matter which he did himself. If in point of fact the jury had drawn from the fact of the finding against the accused of the indictment which had been so placed before them a presumption of guilt by considering it as criminative evidence before it and not merely as "impeaching" evidence, it would have been clearly at fault, and the District Attorney would have been clearly wrong had he attempted to fix and impress upon them that they were authorized to do so.

A prosecuting officer has the right to press upon the jury any view of the case fairly arising out of the testimony, but he should not seek to have the jury accord to evidence which he himself has offered for a specific, limited purpose, and which he doubtless may have succeeded in having received in evidence without objection precisely because of that announcement as to its purpose and object, an effect entirely beyond that which he had himself declared would be its legitimate scope. While it would not be safe practice to tie the prosecuting officer down to an absolutely correct appreciation of the exact scope of the evidence in a case, he should certainly know that testimony introduced for a special purpose could not properly be made to extend beyond the same. We are informed by the court that the expression complained of was made use of by the District Attorney in arguing as to the "credibility" of the accused and not as to his "guilt," and that had his whole argument been brought up in the record that fact would have been apparent. The District Attorney was unfortunate in the use of the word "honest" if he intended to convey the idea of "untruthfulness," for the inference naturally drawn by an ordinary jury from the fact that a second indictment for embezzlement had been found against the same party would be, not that the party was unworthy of belief as a witness, but that he was a dishonest man, and the use by the District Attorney of the word "honest," in connection with that matter was calculated to fix and confirm such an inference or presumption.

The District Judge in his charge finally placed the subject properly before the jury, but we think he should have at once interfered when objection was made and explained clearly to the jury what the legal situation was.

In State vs. Johnson from which we have quoted, we said: "The

District Judge in this case saw the jury; heard what the District Attorney said and listened to all the evidence adduced. If he thought that the verdict was not just, but based upon prejudice resulting from anything said by the District Attorney, we would be slow to believe that he would have overruled a motion for a new trial or let the verdict stand." The same remarks are applicable to the case at bar, but we reach the conclusion in the present case that defendant's complaint was not of sufficient gravity to justify a reversal, with very considerable hesitation.

The last complaint of defendant to which we direct our attention is that in respect to the action of the District Court in overruling his challenge for cause of the juror Barrere, resulting in his having to challenge him peremptorily.

Coupled with the bill of exception reserved by appellant on this subject it was alleged in his motion for a new trial which the court overruled (to which ruling he also excepted) that before the jury was sworn he exhausted his peremptory challenges, and that by the course pursued by the court he had been injured and prejudiced. The Attorney General contends that the question involved in these bills should not be considered by this court for the reason that the juror Barrere did not sit upon the trial, and that there was no affirmative showing through testimony that any other objectionable juror had done so, or that defendant had suffered injury by the court's action. That appellant should affirmatively show injury as well as error.

He cites in support of that position State vs. Garig, 43rd Ann. 365:. State vs. Creech, 38th Ann. 480, and State vs. Tibbs, 48th Ann. 1278

An examination of the case of State vs. Tibbs will show that it was decided adversely to the accused, for the reason that he had not, with any reasonable certainty, shown in his bill of exceptions, upon what legal grounds he had objected to the juror Bernard, nor disclosed the facts upon which the court based its ruling in accepting him. The juror was not objected to for reasons affecting his personal competency, but for some supposed defect in his name. We stated explicitly that we could not grant appellant relief for the reason "that we could not deal with bills of exception" by reaching objections by inference. The reliance of the accused on appeal was in establishing that the court's ruling in accepting Bernard was legally wrong and no question of injury "either legal or actual" as resulting therefrom was pressed. The court in its opinion after passing upon the case, alluded inci-

dentally to that fact, but based no action whatever upon it. It re-ferred to a similar condition of affairs as having been alluded to by the court in State vs. Creech, 38th Ann. 480.

By reference to the opinion in State vs. Creech it will be seen that the court there said: "That it had not been suggested that at the stage of the proceedings when the challenge for cause was overruled, nor even during the whole trial, that the accused had exhausted his per-emptory challenges."

The case was decided upon the absence not only of any showing, but even of any suggestion that the accused had exhausted his per-emptory challenges. It is obvious, therefore, that the question we are considering now was not before the court.

The court refused relief in State vs. Garig for the reason that de-fendant's peremptory challenges had not been exhausted, holding that where several defendants jointly indicted were on trial the peremptory challenges of all of the defendants must have been exhausted before a ruling of the District Court erroneously accepting a juror and forc-ing defendant to exercise one of his peremptory challenges could be assigned as reversible error. In Thompson on Trials, Vol. 1, Sec. 15, this author says: "If the court erroneously overrules a challenge for cause, and thereafter the challenging party excludes the obnox-ious juror by a peremptory challenge, he cannot assign the ruling of the court for error unless it appear that before the jury was sworn his quiver of peremptory challenges was exhausted, in which case there is room for the inference that the erroneous ruling of the court may have resulted in leaving upon the panel other obnoxious jurors whom the party might, but for the ruling, have excluded by peremptory challenge. Some courts therefore hold that it is enough in such a juncture to show that his peremptory challenges were exhausted be-fore the jury was sworn."

As courts holding this position the author cites McGowan vs. State, 9 Yerg. (Tenn.) 184; Burwell vs. State, 18 Texas, 713; Johnson vs. State, 27 Texas, 764; Bowman vs. State, 41 Texas, 471; Lester vs. State, 2 Texas App. 432, 443; Carroll vs. State, 3 Hump. (Tenn.) 315; Robinson vs. Randall, 82 Ill., 521; People vs. Gaunt, 23d Cal. 156; People vs. Gatewood, 20th Cal. 146; Wiley vs. Keokuk, 6 Kan. 94; People vs. McGungill, 41 Cal. 429; Morton vs. State, 1st Kansas 468; Stout vs. Hyatt, 13 Kansas 232; State vs. McQuaige, 5 So. Car. 429; Tuttle vs. State, 6th Texas App. 556; Ogle vs. State, 33 Miss.

383; Brown vs. State, 57 Miss. 424; Mimms vs. State, 16 Ohio St. 221; Erwin vs. State, 29th Ohio St. 186; State vs. Bunger, 14th La. Ann. 461; State vs. Caulfield, 23rd La. Ann. 148; State vs. Lartigue, 29 La. Ann. 642, 646; State vs. Hoyt, 47 Conn. 518.

The author adds that "other States take what seems to be the better view that it must also appear not only that his peremptory challenges were exhausted, but that some objectionable person took his place on the jury who would have otherwise been excluded by a peremptory challenge."

When the trial court in a criminal case by overruling a challenge for cause to a juror forces the prisoner at the bar to exercise one of his peremptory challenges and when subsequently before the jury is sworn the accused has been obliged to exhaust all of his peremptory challenges, we think the accused on appeal has disclosed good ground for the reversal of the verdict against him by showing error in the ruling of the court, without the necessity of his affirmatively showing resulting injury from the court's action by the forcing upon the jury of a juror obnoxious to the accused. Defendant under the provisions of an express statute of the State (Section 997 of the Revised Statutes) had the privilege and right conferred upon him of peremptorily challenging, without showing cause, twelve jurors.

The right to twelve peremptory challenges so conferred is an absolute one. The deprivation of the exercise of that right carries with it *per se,* as it does, in every other case, where the exercise of an absolute statute right has been refused or made unavailable, the nullity of the proceeding in which the refusal has taken place. It is not a question of injury at all further than the injury itself of denying the right. The denial of the right is itself the injury. If further and subsequent injury were deemed to be necessary to enter as a factor in the case such injury would, *juris et de jure,* be presumed. The proposition here announced is, we think, so elementary as to need no special citation of authority to support it. We applied it in State vs. Pruett, 49th Ann. 290, where we said: "The express statutory right granted to a defendant by the act can not be denied because the exercise of it might be barren of results," stating that neither the District nor the Supreme Court was permitted to speculate upon the subject. See also State vs. Jones, 46th Ann. 1399; 55 N. W. 99; 30 N. W. 397; 75 N. W. 650.

The practical result of this action can be illustrated by supposing

that when the twelfth juror was tendered the accused for acceptance or rejection he had, at that time, only utilized ten of his peremptory challenges. This·would leave him with two challenges under his con· trol. The twelfth juror, being, we assume, obnoxious, he would peremptorily challenge him, leaving him one peremptory challenge to use against the party tendered in place of the twelfth juror who had been challenged. This challenge he could exercise without any right on the part of the prosecution to' know on what ground the thirteenth man was rejected.

How would the case stand if, when the twelfth juror was tendered, the accused had exhausted eleven peremptory challenges? This juror being obnoxious he could as befcre reject him, using his twelfth challenge for that purpose, but what would be the situation when the person tendered to replace the person so rejected was offered? No matter how obnoxious he might be, the accused would be forced to accept him unless he could successfully show legal cause for exclusion.

It will be seen at once that the accused would have been placed at a disadvantage by having no peremptory challenge under his control. Now if these eleven peremptory challenges had been ·all used by the accused of his own free will and accord, the situation, though distressing, would be none the less perfectly legal, for he ,would have availed himself to the full extent of his. legal right of twelve challenges, but this would not be the case if one of the eleven had been forced from him by an erroneous ruling on the part of the court. That erroneous ruling would not have the effect of impairing his right to have had the twelfth juror who was actually and ultimately placed upon the jury, rejected without question from the court. The ruling would have left that right intact, but illegally controlled through an error. "The act of the court" cannot be made to injure the accused and force him into a position different from that he was entitled to hold. The accused was entitled to have had the thirteenth man tendered rejected without question and that right he has never lost; he had it all through the trial and he has it on appeal.

He was not called upon when he had, in point of fact, though not of law, exhausted his twelve challenges, to disclose that the last juror tendered was "obnoxious to him," and thus incur his ill will. In view of the action of the trial court which was presumably correct, his mouth was closed, and he was forced to accept the situation until

relieved on appeal by a declaration of the error of the court below. That error, it is our duty to announce, and by announcing it, to replace matters in the position they would have been had the error not been committed.

It is said that the law having granted to the accused twelve peremptory challenges, the moment a single one of these twelve was improperly taken from him by forcing him to exercise it in respect to a particular juror whom he was entitled to have had rejected for cause, his statutory right of having twelve challenges would be at that very moment invaded, as much invaded as if the whole twelve had been withdrawn from him erroneously. That it would have been then and there demonstrated that thereafter he could only have eleven such challenges left.

That if the mere invasion of a statutory right of the accused would *per se* entitle him to claim reversible error, then an error in overruling the challenge of one single juror for cause would entitle him to relief independently of the fact that he should in fact have exhausted the other eleven challenges and that this result would be in the face of an unbroken line of decisions to the contrary. The error of the court in overruling a challenge for cause is not, *per se*, cause for reversal. Whether or not it so operates depends upon the facts of the case as they develop upon the trial of the cause and upon the course adopted by the accused. Should the accused fail to exercise his peremptory challenges entirely, or only exercise them partially, it is obvious that he could not urge that he had been deprived of a privilege which he had not exercised at all or had only partially exercised. The invasion of his statutory right only takes place at the point when the right of peremptory challenge is denied or becomes inoperative, and when it is shown by the facts of the case that he had been unable to utilize and exercise freely and without hindrance (when he had attempted to do so) his right of twelve peremptory challenges. When he had failed entirely to exercise his peremptory challenges or had only done so partially, the question of injury would not be left as a matter in doubt or of presumption, but absence of injury would have been affirmatively shown on the face of the record.

Courts of justice have no right to refuse or to make unavailable, rights or privileges conferred upon parties by the legislature. They can no more do this by erroneous action, than by direct arbitrary action. The right of peremptory challenge was conferred for the

express purpose of enabling parties accused of crime to reject from the jury, persons whom they had reason to distrust for secret, undisclosed grounds, not sufficient to be made available as causes for legal challenge. Prisoners are not called on to state why or wherefore they reject, nor are they called on to incur the ill will of jurors when powerless to challenge them peremptorily by disclosing to the court that any particular juror or jurors actually serving on the jury was "obnoxious" to them. The jury sitting upon the trial may be "legal" jurors by the application of legal tests and yet very obnoxious jurors for secret and undisclosed reasons. Accused are entitled to twelve peremptory challenges to be freely exercised without compulsion in any case from the court. The court cannot, by an erroneous ruling, force the exercise of a peremptory challenge when the accused is entitled, on legal grounds, to a rejection of the particular juror objected to. If in the formation of the jury the prisoner has exhausted the twelve challenges, but one has been used substantially under legal duress, he is, in law, to be held as having really been given the privileges of only eleven peremptory challenges and his statutory right has been invaded.

We think appellant entitled to have us examine the District Court's action in respect to the juror Barrere in order to determine whether by reason of that action defendant was forced to exercise improperly and unnecessarily one of his peremptory challenges. The consideration of that subject in this case has given us very great concern. Was the ruling of the District Judge that Barrere was a legal juror, a person proper and fit to sit upon the trial of defendant's case, a correct ruling?

The first matter attracting attention is the fact that the questions and answers given by Barrere during the first part of his examination are not before us. The only questions and answers taken in writing and transmitted in the record are those taken down during the examination by the defendant and the later examination by the court. The entire examination should have been taken down and forwarded. As matters stand we do not know with any precision or certainty what the juror had answered before he was questioned by the defense and the court. The judge signed the bill with the declaration that "he had previously answered all questions of the District Attorney and counsel for defendant disclosing his fitness and competency from all bias or prejudice." The particular questions and answers upon

which this conclusion of the judge rested are not recited.  The judge states that at one time the answers of the juror upon the question of law touching the burden of proof aroused his suspicions that he was deliberately attempting to evade jury duty, but that a further examination had convinced him that the error was more from ignorance than a desire to evade jury duty, and that his answers were quite natural since the question propounded was one of pure law requiring instruction and explanation.  That it was only when a question of law was asked him as to the rule of the burden of proof that he answered wrong, and for a time after the instruction of the court, persisted in the error.

In the present condition of things we are bound to assume that the juror, during the first part of his examination, had stated in answer to questions propounded to him that he was free from bias and prejudice and had formed and expressed no opinion in reference to the matter before the court, and we must examine his answers to the later questions from the standpoint of his having originally made answers which would have shown him a competent juror.  The first question (as shown in the transcript) which was propounded to him by defendant's counsel was as to the course he would individually pursue if taken as a juror.  The question was whether, "if he was taken as a juror he would require the State to prove defendant's guilt, or he would require the accused to prove his innocence."  His reply was: "that he would require him to prove his innocence."  He was then asked: "Do you mean that you would require him to prove that he was not guilty?" and his reply was, "Yes, sir."

If these questions and answers had followed a prior declaration by the juror that he had formed or expressed an opinion in the case, we scarcely think the court, in view of his persistence in adhering to the answers (the nature and force of which he said he understood fully) after his attention had been specially called to what the law was upon the subject, and of his only changing front (even then not fully and satisfactorily) after he had been threatened with contempt proceedings by the court, would have felt itself justified in holding Barrere to have been a competent juror.  The ultimate answers given as they were in the face of threatened contempt proceedings, would have been entitled to little or no weight.  We have, however, to consider the conclusions of the District Court from the precise circumstances under which that court was called upon to reach them.  We have to con-

sider, therefore, matters from a standpoint considerably different from that which we have just referred to. The question is, was Barrere from the view of his fitness and competency as exhibited by his answers, taken in their entirety, a juror such as could with proper regard to a fair and impartial trial, have been forced upon the defendant as a juryman in spite of the latter's objection that he was not.

Counsel of accused argues this bill as if the juror had declared that he would require the accused to prove his innocence because of the fact that this particular defendant was on trial, or by reason of some fact or facts connected with this special case. Argument from this standpoint we do not think warranted. What we understand the juror to have said was that he would require any party who stood charged by indictment with crime to prove his innocence. He evidently was in accord with the District Attorney in the statement made by him in his argument that "honest men are not indicted for crime." Had he been actually placed on the jury there is no doubt but that this statement of the District Attorney would have powerfully influenced him, for it would have been in the direct line of his announced idea on that subject. His views in respect to that particular matter were expressed in no uncertain form; his answers were reiterated after defendant's counsel had explicitly explained to him the law, and his answers were accompanied by the declaration that he had fully understood the import of what he said. He adhered to them even after the court itself had undertaken to examine him and until he was forced from his position by a threat of being dealt with as for contempt, and he then receded reluctantly and not fully.

The judge, after going so far as to threaten the juror with being dealt with as for contempt, finally accepted him as competent, with the statement that he believed he acted from ignorance and under misapprehension rather than intentionally and from design. The situation after this was such as, in our opinion, forced the defendant, in self-defence, to challenge the juror. He could not with any safety to himself, permit a person to participate in his trial as a juror who had been accepted under such conditions.

We do not think that the court should ever place upon the jury a person whose answers to questions propounded to him on his *voir dire,* either as to questions of law or fact, had been such as to call for a threat from it that he would be dealt with as for contempt by reason of them. A change of view or opinion announced after such a threat

is bound to carry with it a doubt as to its sincerity and a question as to whether it was not the result of coercion. A verdict rendered by a jury of whom such a juryman was one could not but be received with more or less distrust as to its impartiality and correctness.

There is no necessity and no propriety in accepting such a juror. It is not only necessary that an accused person should be found guilty, but that he should be so adjudged by a tribunal with no suspicion attached to it as to its absolute fairness.

It is much better that the defendant, even if guilty, should be afforded a new trial, than that the verdict and sentence against him should stand, with a doubt attached to the conviction that the State in procuring it, had not afforded to the accused all the legal and constitutional privileges to which he was entitled. We are of the opinion that the court erred in overruling the challenge to the juror Barrere, thereby forcing the accused to exhaust his peremptory challenges before completion of the jury.

For the reasons assigned: It is hereby ordered, adjudged and decreed, that the verdict of the jury be set aside and the judgment thereon rendered, be annulled, avoided and reversed, and the case remanded for further proceedings according to law.

Mr. JUSTICE MILLER. I concur on the ground the juror should have been excluded.

Mr. JUSTICE BLANCHARD dissents.