590 So.2d 763 (1991)
STATE of Louisiana, Plaintiff-Appellee,
v.
Thomas Eddie ISGITT, Defendant-Appellant.
No. Cr 91-104.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*764 Michael J. Bonnette, Natchitoches, H. Walker, Robin Schulbert, Shreveport, for defendant-appellant.
Michael Henry, Dist. Atty., Natchitoches, for plaintiff-appellee.
Before GUIDRY, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Defendant, Thomas Eddie Isgitt, was indicted by the grand jury on June 28, 1990, for second-degree murder in violation of LSA-R.S. 14:30.1 for the May 13, 1990, killing of Marcel Gandy. At the jury trial on October 2-3, 1990, defendant was convicted as charged. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.
Defendant appealed his conviction reserving multiple assignment of errors. We find reversible error in one of the assignments, therefore we will pretermit all remaining assignments.
Since the reversible error does not concern the facts of this case, we will not go into a discussion of the facts other than to say that the case concerns a brutal homicide.

CHALLENGE FOR CAUSE
The reversible error concerns a prospective juror, Roosevelt Comite. Defendant contends the trial court committed reversible error by failing to excuse Mr. Comite for cause. We agree.
On voir dire, Mr. Comite testified, in pertinent part, as follows:
"[State]
Q. I'm not asking you to disregard any of this. This is just some of the facts that's going to come out in the case. And I wanted to know your feeling about those, whether it would preclude you from looking at all the facts in the case and making your decision. Would you be willing to do that, to look at all the facts, including these, before you made your decision?
A. Yes, sir. I will.
Q. Okay. That's all the questions I have. Thank you very much. Was there something that you wanted to say or....
A. Well, I think that....
Q. You need to hold that microphone.
A. Not pertaining to this case, but from what I've heard, from, you know, just from rumors, I have sort of formed an opinion that Mr. Isgitt is, you know, his club and all is, ah....seem like they, you know, use more force than necessary at the drop of a hat, you know. Of course I couldn't really say unless I knew the whole facts about the deal. But from everyone that I've talked to and, you know, the media, it seems to me that *765 he would, ah....that, ah.... it's a little bit too much, a little too violent down that way.
Q. Okay. Thank you very much, Mr. Comite.

BY MR. BONNETTE: [Defense Counsel]
Q. Mr. Comite, would that cause you a problem or would that be in your mind if you had to sit as a juror on this case about what you heard about what went on in the past?
A. I honestly believe that it would, yes.
Q. Okay. That's all we want is an honest answer. You think it would affect your decision?
A. I think it would. At this point it would.... unless some more facts.
Q. You understand that we don't have to prove anything in this case, that Mr. Henry has to prove everything?
A. Yes, sir. I understand that. Like I said, from what I've heard, which is just rumors I'm sure, a lot of it, but I believe that it was just too much, you know, force.
MR. BONNETTE:
Your Honor, at this point I'd like to exercise a challenge for cause.
BY THE COURT:
Q. Mr. Comite, who in particular have you discussed this matter with, police authorities?
A. No, sir.
* * * * * *
Q. Well, can we fairly categorize this as just acquaintances that you've been around?
A. Yes, sir. Just basically street talk and discussing the paper in general, from the newspaper.
Q. Now suppose the District Attorney in presenting his case cannot prove to your satisfaction any ingredient of this crime. Could you find the defendant not guilty?
A. You mean if he [defendant] could discredit what I've heard already?
Q. Yes. Suppose after you hear the evidence that you are convinced the defendant is not guilty, can you find him not guilty?
A. Yes, sir.
* * * * * *
Q. So what you're telling us really is that while you have some concern about the place that Mr. Isgitt was running out there you could vote in favor of not guilty. Is that fair?
A. Yes, sir. If like you said the facts were, ah ... were brought up that would discredit what I've heard already in the past I could, ah.... I could vote a not guilty.
Q. Well, I just wanted to see exactly where you stood because you in response to Mr. Mike Bonnette's question said that this would cause you concern.
A. Yes, sir.
Q. Which is natural. All jurors have concern. They want to make sure that the correct thing is done. And it's perfectly normal that you have these feelings, there's nothing wrong with that. I just want to make sure that you can give everybody here a fair trial. Do you think you can do that?
A. Yes, sir. I could do that. Like I said, I'll go with the facts, that's all.
Q. Let me put it another way, Mr. Comite, suppose you were on trial.
A. Yes, sir.
Q. Would you want somebody that feels the way you do, as you've expressed it to me in the last few minutes, sitting on the jury?
A. Well, sir, like I said, if I was characterized as I had told Mr. Bonnette that I felt Mr. Isgitt's personality or character was, no, I wouldn't want someone like me on the jury because they.... I feel that they probably would more than likely feel that I'm a violent person, and I've got a short temper, and that I use more force than necessary, when I could have possibly been wounding instead of shooting to kill, something like that.
Q. You're putting yourself in Mr. Isgitt's shoes.
A. Yes, sir. That's what you....

*766 Q. Uh-huh.
A. Yes, sir.
* * * * * *
BY MR. BONNETTE:
Q. Mr. Comite, when Mr. Henry asked if you had an opinion, or maybe when I asked, you said, no, not on this case.
A. Yes, sir.
Q. Have you heard of any other matters which Eddie might have been involved in?
A. Well, no, no more than the fact that he's been in the media quite a bit. And, ah ...
Q. Okay. Have you formed any opinions about anything else that you might have heard him being involved in?
A. Well, like I said, Mr. Bonnette, I felt that Mr. Isgitt used too much force in the last case if, you know, if I may bring that up.
Q. Okay. You're talking about in the other case...
A. Yes.
Q. ... is that correct?
A. Yes.
Q. Now, he's not on trial for that. You understand that?
A. No, he's not.
Q. Would that also bear on your decision making process in this particular case?
A. No, not with the, ah.... like I told the Judge here, it wouldn't if the facts was to come out to discredit what I've heard, which is that Mr. Isgitt has a short fuse.
Q. Okay. Now, would you require Mr. Isgitt to bring this out?
A. No. I would, ah.... after hearing all the facts if Mr. Henry here was to.... well, if you were to discredit what I've heard, you know, that would be (inaudible)
Q. Okay. Now you understand that we don't have to present a defense in this particular case, you understand that?
A. Uh....
Q. That the State has to prove everything beyond a reasonable doubt. You understand that?
A. Yes.
Q. Would it cause you any problem if we elected not to present a defense?
A. Yeah, because I think it would leave, ah.... it would leave the doubt in my mind. I mean it would leave in my mind that, ah.... what I've heard about Mr. Isgitt, you know. I think so.
Q. I don't have any other questions."
The record shows that based on Mr. Comite's testimony, defendant challenged Mr. Comite for cause. The trial court refused to excuse Mr. Comite for cause and defendant timely objected. The defendant exercised a peremptory challenge and excused Mr. Comite. Before the selection of the jury was complete, defendant had exhausted all of his peremptory challenges.[1]
An erroneous ruling of a trial judge which deprives a defendant of one of his peremptory challenges constitutes a substantial violation of a constitutional or statutory right requiring reversal of his conviction and sentence. State v. McIntyre, 365 So.2d 1348 (La.1978); State v. Neil, 540 So.2d 554 (La.App. 3rd Cir.1989); State v. Hallal, 557 So.2d 1388 (La.1990).
A defendant need only show two things to obtain a reversal: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant; and, (2) that the defendant exhausted all of his peremptory *767 challenges. State v. Smith, 491 So.2d 641 (La.1986).
This rule is well-reasoned since an erroneous ruling by the trial judge on a challenge for cause forces the defendant to use one of his peremptory challenges that otherwise could have been used on another prospective juror. The direct effect is to deny defendant one of his statutorily mandated peremptory challenges.
In the seminal case of State v. Fourchy, 51 La.Ann. 228, 247-48, 25 So. 109, 117 (1899), our Supreme Court explained the reasoning behind the two prong rule:
"Courts of justice have no right to refuse or to make unavailable rights or privileges conferred upon parties by the legislature. They can no more do this by erroneous action than by direct arbitrary action. The right of peremptory challenge was conferred for the express purpose of enabling parties accused of crime to reject from the jury persons whom they had reason to distrust for secret, undisclosed grounds, not sufficient to be made available as causes for legal challenge. Prisoners are not called on to state why or wherefore they reject, nor are they called on to incur the ill will of jurors, when powerless to challenge them peremptorily, by disclosing to the court that any particular juror or jurors actually serving on the jury were "obnoxious" to them. The jury sitting upon the trial may be "legal" jurors by the application of legal tests, and yet very obnoxious jurors for secret and undisclosed reasons. Accused [sic] are entitled to twelve peremptory challenges, to be freely exercised, without compulsion in any case from the court. The court cannot, by an erroneous ruling, force the exercise of a peremptory challenge, when the accused is entitled, on legal grounds, to a rejection of the particular juror objected to. If, in the formation of the jury, the prisoner has exhausted the twelve challenges, but one has been used substantially under legal duress, he is, in law, to be held as having really been given the privileges of only eleven peremptory challenges, and his statutory right has been invaded."
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Hallal, supra.
Applying the above law to Mr. Comite's voir dire examination, we find that Mr. Comite candidly answered questions which clearly showed that he could not be an impartial juror, that he had formed an opinion about the case and further, required defendant to take the stand, in essence to prove his innocence. The trial court attempted to rehabilitate Mr. Comite, but he remained steadfast in his opinion. Under these circumstances, it was clear error for the trial court not to excuse Mr. Comite for cause. We must, therefore, reverse this conviction.[2]
For the foregoing reasons, defendant's conviction is reversed and his sentence is vacated and set aside, and this case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] There are four cases for the proposition that an appellant need no longer have used all his peremptory challenges in order to obtain a reversal based on an erroneous refusal to sustain a challenge for cause. After review of these cases, State v. Robertson, 518 So.2d 579 (La.App. 1st Cir.1987); State v. Burge, 498 So.2d 196 (La.App. 1st Cir.1986); State v. Edwards, 459 So.2d 1291 (La.App. 1st Cir.1984), and State v. Young, 569 So.2d 570 (La.App. 1st Cir.1990), we disagree with our brethren of the First Circuit in its interpretation of the amendment to LSA-C.Cr.P. art. 800. In our opinion a showing that all peremptory challenges have been exhausted before the selection of the jury is complete is still required. See State v. Smith, 491 So.2d 641 (La.1986); State v. Copeland, 530 So.2d 526 (La. 1988), and State v. Hallal, 557 So.2d 1388 (La. 1990).
[2] Defendant also contends the trial court further committed reversible error in giving erroneous jury instructions on the law regarding self-defense and defense of others. We have looked at this complaint and agree that these instructions constitute reversible error, but we pretermit a discussion of this issue since defendant failed to timely object. The record does not show that defendant objected to this jury instruction or that defendant timely provided the court with written proposed charges, thus alleviating the need to object. State v. Mack, 403 So.2d 8 (La.1981). Defendant was convicted on April 1, 1990. On October 4, 1991, defendant filed a motion to supplement the record with his defense counsel's attached affidavit attesting that he did submit written proposed charges to the trial court. The affidavit falls outside of the record, therefore, we cannot accept it. It is well established that this court cannot accept anything outside of the record.