HIGGINS, Justice
 

 (dissenting from the granting of a rehearing).
 

 In the application of the defendant for a rehearing and in the dissenting opinion adopting the theory of law contended for by the accused, it is stated that the majority opinion in this case has misconstrued the provisions of Articles 353 and 557 of the Code of Criminal Procedure.
 

 It will be remembered that during the course of the trial of the defendant on the indictment for murder, the district judge erroneously overruled the defendant’s challenge for cause of a prospective juror and the defendant elected to use one of his peremptory challenges against the juror who was eliminated from the trial of the case. Thereafter, the defendant exhausted the remainder of his peremptory challenges before the jury panel was completed but did not in any way, expressly or impliedly, indicate that he considered any of the jurors selected, after his peremptory challenges had been used, unacceptable, unsatisfactory or obnoxious to him. On the contrary, the record affirmatively shows that he was entirely satisfied with the jury as selected and was willing to have it pass upon the question of.his guilt or innocence.
 

 The defendant contends that his viewpoint, incorporated in the dissenting opinion, is well taken, that is, that as the trial judge improperly overruled his challenge for cause against the prospective juror Hogan, the judge illegally compelled him to use one of his peremptory challenges to get rid of this' juror; and that this error “constitutes a substantial violation of a constitutional or statutory right” of the accused, citing Article 557 of the Code of Criminal Procedure. In short, that the error of law committed by the trial judge in overruling the defendant’s challenge for cause and thereby indirectly depriving him of one of his peremptory challenges constitutes, per se, injury or prejudice to his substantial rights, without any other showing whatsoever, citing State v. Fourchy, 51 La.Ann. 228, 25 So. 109.
 

 I submit that, from a grammatical as well as a logical approach, the majority opinion holding that the defendant must show that he has suffered injury or prejudice to his “substantial rights”, or “a sub
 
 *515
 
 stantial violation of a constitutional or statutory right”, in addition to the erroneous overruling of his challenge for cause and the subsequent exhaustion of his peremptory challenges, places upon Articles 353 and 557 of the Code of Criminal Procedure the proper construction as heretofore given these articles by this Court in other cases, and that this interpretation is not based upon mere “loose expressions” of this Court.
 

 Article 353 of the Code of Criminal Procedure reads as follows:
 

 “No defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause, unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover, the erroneous allowance of challenges for cause affords the defendant no ground of complaint, unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an obnoxious juror.”
 

 It is a well-recognized fact that punctuation is the art of pointing written composition so as to make clear the proper meaning, construction, and delivery thereof; and that a period is used to denote the end of a complete sentence and a semicolon is used to separate the clauses of a compound sentence. With reference to the grammatical construction of the above Article, it will be noted that after setting forth when the defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause, a semicolon is used. If the-Legislature intended that the wording of the Article preceding the semicolon were to be treated as a complete sentence and in no way affected or qualified by the language which follows it, the members thereof would have used a period instead of the semicolon at that point.
 

 In 38 Words and Phrases, Permanent Edition, at page 584, we find that:
 

 “According to well-established grammatical rules, a semicolon is a point only used to separate parts of a sentence more distinctly than a comma. * * *
 

 “ ‘Semicolon/ in statute, is used to separate consecutive phrases or clauses independent of each other grammatically but dependent alike on some word preceding or following.”
 

 It is stated in Corpus Juris, Vol. 57, at page 121, that a semicolon “ * * * is used only to separate parts of a sentence more distinctly than a comma, as to co-ordinate clauses of unusual length * * * or to show that what follows is grammatically independent, though closely related in thought.”
 

 Furthermore, it will be observed that immediately following the semicolon the word “moreover” is used as a conjunction. Webster’s New International Dictionary defines it as follows: “Moreover — Beyond what has been said; further, besides; in addition.”
 

 The use of the semicolon and the conjunction “moreover” by the- Legislature show that the entire article consists of a compound sentence, the two parts of which are so closely connected that one is not
 
 *516
 
 logically independent of the other, even though the part preceding the semicolon and the part following it may be considered grammatically independent of each other. Therefore, it cannot be said that the article contains two separate and distinct sentences.
 

 It will be observed that a comma is placed after the word “moreover” in the fifth line and after the word “law” in the second to the last line of the article. Between those two commas, the only matter dealt with is the erroneous allowance of challenge for cause by the State and, therefore, the words “such ruling” contained in the eighth line of the article refer to the “erroneous allowance of challenges for cause” immediately following the conjunction “moreover.” The comma after the word “law,” in the second to the last line of the article, shows that the clause “ * * * or unless the defendant by such ruling is forced to accept an obnoxious juror” is not merely restrictive of the language which immediately precedes it but also refers to the first part of the article preceding the semicolon. Consequently, it is incorrect to state that the qualifying language just quoted only restricts that part of the article which follows the semicolon.
 

 The foregoing correct grammatical construction is made clearer by an analysis of the logical application of the Article. It will be observed that the first part of the compound sentence preceding the semicolon merely makes the general declaration that before the defendant can complain of any ruling sustaining a challenge for cause by the State or refusing to sustain a challenge for cause by the defendant, he must show that his peremptory challenges have been exhausted before the completion of the jury panel. In this part of the compound sentence, the Legislature makes no attempt to set forth what the accused would be entitled to complain of if the two conditions in the first part of the compound sentence are shown to exist, that is, the erroneous ruling and the exhaustion of peremptory challenges. The grounds for legal complaint by the defendant are set forth only in the second part
 
 of
 
 the compound sentence and are that the ruling sustaining the State’s challenge for cause must have the effect of giving the State more peremptory challenges than it was entitled to by law, or that the erroneous ruling sustaining the challenge for cause by the State, or that the erroneous refusal to sustain a challenge for cause by the defendant resulted in the accused being forced to accept an obnoxious juror. Nowhere in the second part of the compound sentence is it stated that the defendant must exhaust his peremptory challenges before he can complain. This condition is found only in the first part of the compound sentence. Therefore, the first part of the compound sentence is essential to a proper construction of the second part thereof and the second part of the compound sentence is necessary to a proper construction of the first part thereof.
 

 Under the erroneous view that the article contains two separate and distinct sentences, let us see how inconsistent the Legislature is made to appear. For example, according to the defendant’s viewpoint, incorporated in the dissenting opinion, the
 
 *517
 
 first part of the article is a separate and independent sentence from the second part and therefore all that the accused has to do to secure the annulment of the verdict and the sentence and the granting of a new trial is to show the trial judge erroneously-disallowed his challenge for cause and that he subsequently exhausted his peremptory challenges before the jury was finally selected, prejudice to his substantial rights or “a substantial violation” ©f his constitutional or statutory rights being presumed. But under the so-called second separate sentence, in instances where the trial judge erroneously sustained a challenge for cause by' the State and the defendant thereafter exhausted his peremptory challenges, prejudice, injury or harm is not presumed from those two circumstances alone, but the defendant must also show that, as a result of the erroneous ruling sustaining the State’s challenge for cause, it obtained more peremptory challenges than it was entitled to by law, or that the defendant, as a result of the ruling, was forced to accept an obnoxious juror. Briefly, under the first alleged separate sentence of the article, it is stated that injury, harm and prejudice are presumed but under the second alleged sentence the defendant must show additionally either that the State received more peremptory challenges than it was entitled to by law, or that he was forced to accept an obnoxious juror as a result of the erroneous ruling of the trial judge in sustaining the State’s challenge for cause. Thus the court in the first instance must presume prejudice, and in the second instance it must not do so.
 

 Since the so-called second complete sentence is silent as to whether or not the accused would be required to also show that he had previously exhausted his peremptory challenges, why not also take for granted that he did so even though the record were silent on this point. It is just as logical to assume that the defendant exhausted his peremptory challenges when the record does not show that he did so, as it is to presume that he suffered any prejudice or injury by the erroneous ruling disallowing his challenge for cause when the record does not show that he was prejudiced in any way. While nothing is said in this alleged second sentence about the defendant exhausting his peremptory challenges, it is obvious that he could not successfully stand before the court and contend that as a result of the trial court’s erroneous allowance of- challenge for cause to the State, he was forced to accept an obnoxious juror, because, if he had a peremptory challenge left, he could not be compelled to accept an obnoxious juror, as he had the means of protecting himself by merely using the peremptory challenge against the obnoxious juror. The fact that nothing is said in the second alleged complete sentence with reference to the exhaustion of peremptory challenges by the defendant definitely shows that the alleged second complete sentence is dependent upon the first alleged complete one, in order to give the article, consisting of these two alleged complete sentences, meaning.
 

 Under the interpretation which we have given the article in the majority opinion, the clause “ * * * or unless the de
 
 *518
 
 fendant by such ruling is forced to accept an obnoxious juror,” contained in the two last lines of the article, is given full legal effect in connection with the first part of the compound sentence and is not eliminated therefrom and given no effect, as was done in the dissenting opinion, in the instant case, where the district.judge improperly refused to sustain the defendant’s challenge for cause.
 

 The proper logical and grammatical construction given the article in the original opinion is made more apparent by the following explanation:
 

 “353. No defendant can complain of any ruling sustaining [a challenge for cause by the State] or refusing to sustain a challenge for cause [by the defense], unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover, the erroneous allowance of challenges for cause [by the State] affords the defendant no ground of complaint, unless the effect of such ruling [the erroneous allowance for challenge for cause by the State] is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling [the erroneous sustaining of a challenge for cause by the State or the erroneous refusal to sustain a challenge for cause by the defense] is forced to accept an obnoxious .juror.” (Brackets ours.)
 

 The foregoing conclusion makes the provisions of Article 353 and those of Article 557, Code of Criminal Procedure, congruous and harmonious. Article 557 reads, as follows:
 

 “No judgment shall be set aside, or a new trial granted by any appellate court of this State, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as
 
 to error of any matter of pleading or procedure,
 
 unless in the opinion of the court tc which application is made, after an examination of the entire record,
 
 it appears that the error complained of
 
 has probably resulted in a miscarriage of justice,
 
 is prejudicial to the substantial rights of the accused,
 
 or
 
 constitutes a substantial violation
 
 of a constitutional or statutory right.” (Italics ours.)
 

 As this is a criminal case and it is on appeal, the above article is certainly pertinent here.
 

 Errors committed by the judge in misdi-. recting the jury or improperly admitting or rejecting evidence and errors made by his ruling in connection with any matter of pleading or procedure are without doubt legal errors and pertain to the statutory or constitutional rights of the accused. It is clear that under the above article the defendant cannot complain if the error committed by the trial judge is harmless and not prejudicial, because it is expressly stated therein that it must appear from the record that the error complained of “has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.”
 

 The word “substantial” is defined by the lexicographers as follows:
 

 
 *519
 
 Webster’s New International Dictionary, Second Edition: “Substantial — adj.—1. Consisting of, pertaining to, of the nature of, or being, substance; material. 2. Not seeming or imaginary; not illusive, real; true. 3. That is of moment; important; essential; material. 4. Having good substance; strong; stout; solid; firm.” “Ant. —immaterial; unreal.”
 

 40 Words and Phrases, Pérmanent Edition, p. 492:
 

 “ ‘Substantial’ is an adjective meaning something worth while as distinguished from something without value or merely nominal.”
 

 In Corpus Juris, Vol. 60, page 978, we find:
 

 “Substantial error. Error which upon the trial works harm and from which one sustains substantial injury.”
 

 If the error complained of “constitutes a substantial violation of a constitutional or statutory right,” necessarily it is a substantial error. A substantial error is clearly not a harmless, inconsequential or immaterial error that does not prejudice or harm the rights of an accused.
 

 ■ The clause “* * * or constitutes a substantial violation of a constitutional or statutory right” means that the error complained of has caused the defendant to lose substantial constitutional or statutory rights and this is just another way of saying that he has been prejudiced or injured. But this article expressly states that the relief is not to be granted unless “* * *
 
 it appears that the error complained of
 
 * * *
 
 is prejudicial to the substantial rights of the
 
 accused." (Italics ours.)
 

 In the instant case, at the time that the prospective juror Hogan was challenged for cause and the defendant elected to use his tenth peremptory challenge to prevent him from serving as a juror, the defendant still had two more peremptory challenges. After the exhaustion of all of his twelve peremptory challenges, the defendant did not further protest or complain that any of the balance of the jurors selected to try the case were in any way obnoxious or unacceptable to him. It appears that he was entirely satisfied and willing to have the jury as selected determine his case. In short, no occasion arose for the defendant to use a peremptory challenge and, therefore, while the erroneous ruling on his challenge for cause indirectly deprived him of a peremptory challenge, this error on the part of the judge did not constitute “a substantial violation of a constitutional or statutory right.”
 

 To assume or presume injury or prejudice to the constitutional or statutory rights of the accused, or to say that the accused suffered the loss of a substantial constitutional or statutory right, contradicts the record which refutes the presumption that injury or prejudice or loss of substantial rights resulted because the defendant got jurors satisfactory and acceptable to him.
 

 The result and practical effect of the defendant’s contention as incorporated in the dissenting opinion leads to this anomalous conclusion:
 

 
 *520
 
 In a murder case both the state .and the accused had exhausted their peremptory-challenges at the time the ninth juror had been placed in the box. Theretofore the accused was required, because of the erroneous ruling of the district judge in disallowing his challenge for cause, to use his first peremptory challenge. The tenth, eleventh, and twelfth prospective jurors were examined by both the state and the defendant on their voir dire and both sides announced that the jurors were satisfactory to them and they were willing for them to serve on the jury. The defendant made no complaint whatever that these three jurors were in any way unacceptable or obnoxious to him and, as a matter of fact and truth, they were entirely satisfactory and wholly acceptable to him in every way. Therefore, it was not necessary to use a peremptory challenge on any of these three prospective jurors and the defendant would not have used a peremptory challenge on any one of them, even if he did have left the one of which the judge’s ruling, in effect, had deprived him.
 

 To presume injury or to assume prejudice, under these circumstances, and thereby have the verdict of the jury and the sentence of the court annulled and set aside and a new trial granted to the defendant, is certainly granting unto him more than the law', and particularly Articles 353 and 557 of the Code of Criminal Procedure, provides that he is entitled to. .
 

 The defendant’s reasoning defeats justice not only through mere harmless technical error but destroys it on an illusive theory which has no foundation in fact or truth. Of course, if the, defendant, after the exhaustion of his peremptory challenges complained to the trial judge that while the prospective juror had shown himself to be qualified and competent, nevertheless, he was unacceptable or obnoxious to him and that if the judge had not deprived him of his peremptory challenge by his erroneous ruling in disallowing his challenge for cause, he would have challenged this prospective juror, and then, if that objection also had been overruled, and the juror permitted to sit in the defendant’s case, a situation would have arisen showing injury and prejudice to the substantial constitutional and statutory rights of the accused. The complaint then would not be predicated on a mere theory nor a presumption of prejudice or injury, but upon a factual situation, as reflected by the record, showing injury and prejudice to the rights of the accused.
 

 If the Court were to adopt the theory of ■ the defendant upon which the dissenting opinion is founded, as a sound legal conclusion in connection with the construction of Articles 353 and 557 of the Code of Criminal Procedure, then, to be consistent, in every instance where some error had been committed in the trial of a case with reference to the defendant’s constitutional or statutory rights, it would also be compelled to presume prejudice and injury to the accused’s rights and thus annul the verdict of the jury and the sentence of the court, and grant the défendant a new trial. 'Such a conclusion necessarily destroys the law which requires a defendant in a criminal case to object to any proposed violation of his rights by the State during the trial of
 
 *521
 
 the case and to reserve a bill of exception to - the ruling of the trial court, except in the instance where the error is patent upon the face of the record. Articles 510 and 557, Code of Criminal Procedure.
 

 There was error in the ruling of the trial court in disallowing the defendant’s challenge for cause. The bill of exception covers that point alone. Neither the bill of exception nor any other part of the proceedings indicate in the slightest that the substantial rights, constitutional or statutory, of the accused were prejudiced thereby, because the record affirmatively shows that after his peremptory challenges were exhausted, he voluntarily, without complaint or obj ection, accepted the remaining jurors of the panel. Therefore, it cannot be presumed or assumed that his rights to a fair and impartial trial under the Constitution and statutes of this State were in any way impaired or prejudiced by the ruling of the trial court.
 

 After the defendant’s peremptory challenges were exhausted, if he had any objection to any of the jurors selected, he simply had to complain (as any other accused would be required to do) that he had reached the point in the trial where the previous erroneous ruling of the judge in disallowing his challenge for cause and requiring him to use one of his peremptory challenges was about to cause prejudice to his rights by compelling him to accept an obnoxious juror. If the district judge, after having had the matter called to his attention, ruled adversely to the defendant, he could have reserved a bill of exception which would have presented the matter to this Court in such a way that we could grant relief.
 

 It is said that, in the trial of a criminal case, after the accused has used all of his peremptory challenges and the district judge has committed error in sustaining the State’s challenge for cause, the defendant might be compelled to take an unacceptable juror as distinguished from an incompetent or disqualified one, because he has no more peremptory challenges to use. If such a situation were to develop, the defendant would have to complain to the trial judge that, as a result of the erroneous ruling on his challenge for cause, he was deprived of his peremptory challenge and was now about to be compelled to accept a juror who, while not incompetent or disqualified, was unacceptable or obnoxious to him. If the objection or complaint were sustained, that would end the matter and if overruled, the accused could reserve a good bill of exception. Thus the record would show that the accused had suffered prejudice or injury to his legal rights and the appellate court could consider the matter and grant the proper relief.
 

 If the trial judge makes a mistake in allowing the State’s challenge for cause, “such ruling” cannot compel the defendant to accept an obnoxious juror, first; because that particular juror would be excused and would not sit in the trial of the case; second, since that juror has been erroneously excused by the court, it necessarily follows that another prospective juror must be examined on his voir dire. Then, assuming that the defendant had exhausted all of his peremptory challenges, he would
 
 *522
 
 have one of two choices: First, he could accept the juror because he was satisfied with him and willing to have him serve in the trial of the case and, in that event, the erroneous ruling of the trial judge would come to naught and in no way prejudice the defendant’s right; and, second, if the defendant were not satisfied with the juror, not because he was incompetent or disqualified for legal cause, but because he considered him unacceptable or obnoxious, he had the unquestionable legal right to complain to the trial judge and to reserve a bill of exception to any adverse ruling, and could thus show reversible error entitling him to an annulment of the verdict and the sentence and a new trial. But it is clear .that it would be the latter ruling of the district judge rejecting the defendant’s complaint that would have been the ruling which compelled him to accept an obnoxious juror and not the former one, when the district judge improperly allowed the State’s challenge for cause.
 

 The defendant’s contention, adopted by the dissenting opinion, would result in permitting an accused, where the district judge failed to sustain his challenge for cause, and he had subsequently exercised all of his peremptory challenges, before the jury panel was completed, to presume that such ruling was “* * * prejudicial to the substantial rights of the accused, or constituted a substantial violation of a constitutional or statutory right.” This conclusion is basically and fundamentally unsound, because the Constitution and the laws of this State only guarantee and assure an accused a fair and impartial trial. The law does not guarantee him a perfect trial free of harmless error because, on appeal, either by bills of exception or errors patent upon the face of the record, the defendant is obliged to show the appellate court that he failed to receive a fair and impartial trial due to the fact that some harmful error was committed by the trial court which “* * * probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.” Articles 510 and 557 of the Code of Criminal Procedure.
 

 I again state that the defendant in this case has utterly failed to show that the erroneous refusal to allow his challenge for cause has had any of these effects upon his case for the reason that the record affirmatively shows, and there is nothing therein, even impliedly, to the contrary that he accepted voluntarily, without complaint or objection, all of the jurors who served in the trial of his case and that none of the jurors that he complained of, or objected to, was permitted to serve in the trial.
 

 To allow the defendant to do what he seeks to have done in this case would be allowing him, after reserving a bill of exception to the trial judge’s erroneous dis-allowance of his challenge for cause, to simply exhaust his peremptory challenges, and even though all of the jurors who were thereafter voluntarily and without complaint or objection by him selected to serve on the jury, to be assured a second trial, in the event of his conviction, and thereby, for all practical purposes, he would be
 
 *523
 
 given two trials, when the record affirmatively shows that the erroneous disallowance of his challenge for cause did not compel him thereafter to accept an obnoxious juror. This result, based upon the interpretation and construction contended for by the defendant and adopted by the dissenting opinion, is inconsistent with the unquestioned sound jurisprudence that the accused is not entitled to complain of the improper overruling of his challenge for cause, unless the record shows that he has exhausted his peremptory challenges. The reason for this holding of the court is that injury and prejudice to the substantial rights or constitutional and statutory rights of the accused will not be presumed. Unless he affirmatively shows that his peremptory challenges have been exhausted, he cannot complain because it will be considered that he has peremptory challenges left and power to protect himself against being compelled to accept an obnoxious juror by peremptorily challenging him.
 

 In the dissenting opinion, it is stated in several places that the erroneous ruling of the district judge in failing to sustain the defendant’s challenge for cause deprived him of a constitutional right granted him by the Bill of Rights of the Constitution of Louisiana.
 

 Section 10 of Article 1 of the Constitution provides that: “In all criminal prosecutions, the accused * * * when tried by jury shall have the right to challenge jurors peremptorily, the number of challenges to be fixed by law.” Therefore, as far as the fixing of the number of peremptory challenges is concerned, the Legislature was given full power and discretion therein. It carried out this constitutional authorization by placing Article 354 in the Code of Criminal Procedure, which grants both the accused and the State, in a murder trial, twelve peremptory challenges. As this article fixed the number of challenges, the Legislature could constitutionally pass Articles 353 and 557, which provide for the kind of errors the defendant can complain of successfully. It is not even argued here that Articles 353 and 557 of the Code of Criminal Procedure are unconstitutional insofar as they may affect or be construed as governing errors made in the trial with reference to the defendant’s peremptory challenges.
 

 On page 17 of the dissenting opinion [7 So.2d 239
 
 [6]
 
 ], it is stated: “In the majority opinion there is no attempt to show — and in fact it is utterly impossible to conceive — how the phrase in the second sentence in this article, ‘unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law5, could ‘refer back’ to the phrase in the beginning of the first sentence, ‘any ruling * * * refusing to sustain a challenge for cause.’ "
 

 In the majority opinion, it is obvious that the words “such ruling” referred to were those contained in the second to last line of Article 353 of the Code of Criminal Procedure with reference to the defendant being compelled ,to accept an obnoxious juror and not to the words “such ruling” contained in the eighth line, which refers
 
 *524
 
 back to the phrase in the fifth line, that is, “erroneous allowance of challenges for cause.” These two quoted parts of the alleged second’ separate sentence of Article 353 clearly refer to the ruling of the district court sustaining or allowing erroneously the State’s challenge for cause which finally resulted in the exercise' by the prosecution of more peremptory challenges than it was entitled to by law. We expressly stated that there was no issue in the case on that point. Consequently, it is clear in our original opinion that we were only referring to the words “such ruling” contained in the second to the last line of the article, dealing with the issue involved here of an accused being compelled to accept an obnoxious juror.
 

 On page 21 of the dissenting opinion [7 So.2d 241
 
 [7]
 
 ], it is stated that this case is “a sad example” of the Court’s interpretation of Article 353 of the Code of Criminal Procedure, as “the defendant-stands condemned to spend the remaining years of his life in the penitentiary” because his attorney did not think of challenging qualified jurors after his peremptory challenges were exhausted, “even though it is conceded also that if the additional challenge had been made the judge would have been obliged to overrule it.”
 

 The- majority opinion simply pointed out that the defendant had failed to complain in any way that the jurors selected after his peremptory challenges were exhausted were unacceptable or obnoxious to him, as - distinguished from being disqualified or incompetent, and in the absence of. some objection or complaint noted in the record, the court could not presume prejudice when the record afiirmatively shows that he accepted the remaining jurors of the panel willingly. If, in fact and truth, he had any complaint whatsoever against these remaining jurors and had in any way indicated his desire to have anyone of them excused and the trial judge had an opportunity to determine whether or not the defendant’s position was correct, he might have sustained the defendant’s objection and then and there ended the matter because the defendant could not complain. On the other hand, if the trial judge had overruled his objection and the defendant reserved a bill of exception and the juror was permitted to serve on the jury, this would have been a perfect bill of exception, for it would have shown that the defendant’s substantial rights were prejudiced or there was a “substantial violation of a constitutional or statutory right.” The defendant in any criminal case is required to object at the time of the occurrence of the alleged error and reserve a bill of exception to obtain relief. But, even if he objects and does not reserve a bill of exception, he waives his right to complain. Article 510, Code of Criminal Procedure.
 

 The defendant was not found guilty and sentenced to- be incarcerated in the State Penitentiary for the remainder of his life due to the harmless technical error complained of, but because the evidence in the case proved to the satisfaction of the jury and beyond a reasonable doubt that ■ the defendant had murdered the police
 
 *525
 
 officer, who was acting in the line of his duty. The trial judge was also convinced of his guilt because he refused to grant him a new trial. Article 509, Code of Criminal Procedure. The record shows that the accused had previously threatened the life of the deceased because he sought to make him obey and respect the law and that the defendant shot the deceased several times without any provocation whatsoever. Our discussion of the case under bills of exception 5- and 6 will sufficiently reflect this fact.
 

 It would indeed be a “sad” commentary on the administration of justice, after' the Grand Jury, the petit jury, the district attorney, and the district judge have performed their duty by giving the defendant a fair and impartial trial free of any prejudicial or harmful errors, for this Court to set aside and annul the verdict of the jury and the sentence of the court and grant a new trial purely and simply on a harmless error because of imaginary or assumed prejudice or injury, when the record affirmatively shows that none existed.
 

 For the above reasons, I respectfully dissent from the granting of a rehearing in this case.
 

 [6]
 

 199 La. 1021.
 

 [7]
 

 199 La. 1027.